LUTHER DELEON MOORE AND SUDIE MARIE MOORE, PLAINTIFFS v. COACHMEN INDUSTRIES, INC., SPORTSCOACH CORPORATION OF AMERICA AND MAGNETEK, INC., DEFENDANTS

No. COA96-1467

(Filed 5 May 1998)

1. **Evidence and Witnesses § 967 (NCI4th)— affidavits of corporate counsel—business records exception to hearsay rule**

   Affidavits by defendant recreational vehicle manufacturer's corporate counsel were admissible under the business records exception to the hearsay rule to support defendant's motion for summary judgment in an action for negligence and breach of warranty where the affidavits were made upon the counsel's personal

MOORE v. COACHMEN INDUSTRIES, INC.

[129 N.C. App. 389 (1998)]

knowledge acquired through review of his employer's business records, and he attested to information known or made known to him in the course of his employment as defendant's corporate counsel.

**2. Limitations, Repose, and Laches § 27 (NCI4th)— product liability—negligence—fire—beginning of limitation period**

The three-year statute of limitations for a negligence claim against the manufacturer of a recreational vehicle that was destroyed by fire began to run on the date of the fire.

**3. Sales § 78 (NCI4th)— recreational vehicle—limited warranty—no extension by service contract**

An extended service contract purchased by the buyers of a recreational vehicle from a finance company did not extend the manufacturer's limited warranty where the buyers failed to show any relationship between the manufacturer and the service contract.

**4. Sales § 78 (NCI4th)— recreational vehicle—validity of limited warranty**

A recreational vehicle manufacturer's limited warranty providing that the manufacturer will repair or replace without charge any defective part for one year from the retail purchase date or for the first 15,000 miles of use, whichever comes first, that the manufacturer is not liable for incidental or consequential damages, and that implied warranties are limited in duration to the terms of the written warranty was not unconscionable and barred the buyers' claims for breach of express and implied warranties filed more than four years after the vehicle was purchased.

**5. Sales § 81 (NCI4th)— recreational vehicle—manufacturer's limited warranty—protection of component manufacturer**

The manufacturer of a power converter unit that was a component of a recreational vehicle purchased by plaintiffs was protected by the limited warranty issued by the vehicle manufacturer although it made no express reference to coverage of the power converter or the power converter manufacturer. Therefore, language in the limited warranty barred plaintiff buyers' claim against the power converter manufacturer for breach of the implied warranty of merchantability.

MOORE v. COACHMEN INDUSTRIES, INC.

[129 N.C. App. 389 (1998)]

**6. Negligence § 7 (NCI4th)— recreational vehicle—loss by fire—economic loss rule—negligence action against manufacturer not permitted**

The economic loss rule prevents the purchasers of a recreational vehicle from recovering on their negligence claim against the manufacturer for loss of the vehicle by fire allegedly caused by a defective component of the vehicle.

Appeal by plaintiffs from order entered 30 August 1996 by Judge Thomas W. Ross in Guilford County Superior Court. Heard in the Court of Appeals 26 August 1997.

*Hill, Evans, Duncan, Jordan & Davis, by Karl N. Hill, Jr. and Michele G. Smith, for plaintiffs-appellants.*

*Adams Kleemeier Hagan Hannah & Fouts, P.L.L.C., by Larry I. Moore, III, for defendants-appellees Coachmen Industries, Inc. and Sportscoach Corporation of America.*

*Tuggle Duggins & Meschan, P.A., by J. Reed Johnston, Jr. and Joseph F. Brotherton, for defendant-appellee MagneTek, Inc.*

TIMMONS-GOODSON, Judge.

This action for negligence and breach of implied and express warranties flows from the purchase and eventual destruction of a certain recreational vehicle. Plaintiffs Luther Deleon Moore and Sudie Marie Moore purchased a new 1989 Sportscoach Cross Country recreational vehicle, manufactured by defendant Coachmen Industries, Inc. (hereinafter "Coachmen") and defendant Sportscoach Corporation of America (hereinafter "Sportscoach"), from Carolina Country RV, Inc., an authorized distributor of defendants Coachmen and Sportscoach. Defendant Sportscoach was a subsidiary of defendant Coachmen. Plaintiffs' vehicle was covered by a New Recreational Vehicle Limited Warranty (hereinafter "Limited Warranty"), effective for one year from the date of purchase or the first 15,000 miles of use, whichever occurred first. This Limited Warranty included a disclaimer of liability for incidental or consequential damages and a statement limiting implied warranties in duration to the term of the written warranty. At the time of the purchase of the recreational vehicle, plaintiffs also purchased an extended service plan administered by ITT Commercial Finance, which extended the warranty on the vehicle for five years or 50,000 miles. The cost of this extended service plan was added to the purchase price of the recreational vehicle.

[129 N.C. App. 389 (1998)]

Plaintiffs' recreational vehicle was equipped with two electrical systems, a 120-volt alternating current (AC) system and a 12-volt direct current (DC) system, and an AC to DC converter system. The power converter unit in the vehicle had been manufactured by defendant MagneTek, Inc. (hereinafter "MagneTek").

During the first week of November 1993, plaintiffs loaned their recreational vehicle to Linda and Harvey Reep for a weekend. During the Reeps' travels, they turned on the vehicle's generator and the fan to the vehicle's ceiling air conditioner unit. Approximately five minutes later, the Reeps noticed heavy smoke and flames in the rear of the vehicle, in front of the bedroom area. The Reeps pulled the vehicle to the shoulder of the interstate and narrowly escaped, before the vehicle and all of its contents were destroyed by fire. The contents of the recreational vehicle included the following: a satellite dish and receiver box purchased by plaintiffs in September 1990 for $4,100.45, as well as various other personal property purchased for approximately $575.00 shortly after plaintiffs purchased the recreational vehicle in September 1989. At the time of the fire, the odometer reading on plaintiffs' recreational vehicle was approximately 10,000 miles.

James B. Alexander, an expert in the cause and origin of fires, examined plaintiffs' recreational vehicle after the fire. Mr. Alexander concluded that the fire began at the vehicle's electrical converter. Dr. James Samuel McKnight, an expert in the area of electro-mechanical engineering, also examined the vehicle after the fire. After examining the vehicle's electrical equipment, which included the vehicle's electrical power converter, control box, and junction box, Dr. McKnight concluded that the fire was due to a fault in the wiring, ultimately caused by improper insulation or mounting of the power converter, or an electrial fault in the power converter.

On 1 June 1995, plaintiffs instituted this action against defendant Sportscoach and defendant Coachmen alleging negligence and breach of implied and express warranties; and against defendant MagneTek alleging negligence and breach of the implied warranty of merchantability.

Defendants raised several defenses to plaintiffs' claims in their answers and amended answers, including the defenses of statute of limitations, the economic loss doctrine, and the Limited Warranty. Thereafter, defendants filed motions for summary judgment. Along with their motions, defendants Coachmen and Sportscoach filed the

## MOORE v. COACHMEN INDUSTRIES, INC.

[129 N.C. App. 389 (1998)]

affidavit of Michael Pangburn, senior corporate counsel for defendant Coachmen and former senior corporate counsel for defendant Sportscoach. In response, plaintiffs filed the affidavits of Luther Moore and expert witness, Dr. McKnight. A second affidavit of Mr. Pangburn was subsequently filed, and later, a second affidavit of Mr. Moore was filed.

Defendants' motions for summary judgment were heard by Judge Thomas W. Ross during the 5 August 1996 civil session of Guilford County Superior Court. During the hearing, plaintiffs objected to the admission of the affidavits of Mr. Pangburn contending that the affidavits were not based on personal knowledge, that they set forth facts that would not be admissible into evidence at trial, and that they did not show the affiant to be competent to testify to the matters stated in the affidavits. The court overruled plaintiffs' objections and after considering all of the affidavits, the unverified pleadings, answers to interrogatories, responses to requests for productions of documents, briefs and arguments of counsel, Judge Ross entered an order, out of session (with the permission of the parties), granting defendants' motions for summary judgment. Plaintiffs appeal.

Plaintiffs present essentially two arguments on appeal:

(1) The trial court erred in admitting the affidavits of Michael Pangburn in support of defendants' motions for summary judgment; and

(2) The trial court erred in granting defendants' motions for summary judgment and dismissing the action of the plaintiffs.

For the reasons discussed herein, we find these arguments to be unpersuasive, and accordingly, affirm the order of the trial court.

### I. Admission of Michael Pangburn's Affidavits

[1] First, plaintiffs contend that the affidavits of Mr. Pangburn were incompetent because they were not made on personal knowledge, did not set forth such facts as would be admissible into evidence at trial, and did not show affirmatively that the affiant was competent to testify as to the matters stated therein. Therefore, defendant argues that the trial court erred in admitting these affidavits in support of defendants' motions for summary judgment. We do not agree.

This Court's standard of review on appeal of summary judgment is well-established. Summary judgment is properly granted if considering the pleadings, depositions, answers to interrogatories, and

admissions on file, together with affidavits, there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. N.C.R. Civ. P. 56; *Davis v. Town of Southern Pines*, 116 N.C. App. 663, 665, 449 S.E.2d 240, 242 (1994), *disc. review denied*, 339 N.C. 737, 454 S.E.2d 648 (1995). The moving party bears the burden of showing the lack of triable issue of fact. *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985). The moving party may meet its burden by showing that the nonmoving party's action is barred by an affirmative defense, such as the expiration of the applicable statute of limitation. *Reece v. Homette Corp.*, 110 N.C. App. 462, 464, 429 S.E.2d 768, 769 (1993). Once the moving party meets its burden, the nonmoving party must "produce a forecast of evidence demonstrating that the [nonmoving party] will be able to make out at least a prima facie case at trial." *Collingwood v. G.E. Real Estate Equities*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989). The evidence is to be viewed in the light most favorable to the nonmoving party. *Davis*, 116 N.C. App. at 666, 449 S.E.2d at 242.

Rule 56(e) of the North Carolina Rules of Civil Procedure governs the form of affidavits, and provides:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . .

N.C.R. Civ. P. 56(e). Hearsay matters included in affidavits should not be considered by a trial court in entertaining a party's motion for summary judgment. *Savings & Loan Assoc. v. Trust Co.*, 282 N.C. 44, 52, 191 S.E.2d 683, 688-89 (1972). Similarly, a trial court may not consider that portion(s) of an affidavit which is not based on an affiant's personal knowledge. *Id.* The fact that an affiant's knowledge was gathered from business records or communications is not fatal to the Rule 56(e) requirement that an affidavit be based on the personal knowledge of the affiant. *See Bell Arthur Water Corp. v. N.C. Dept. of Transportation*, 101 N.C. App. 305, 309, 399 S.E.2d 353, 356, *disc. review on additional issues denied*, 328 N.C. 569, 403 S.E.2d 507 (1991). The business records exception to the hearsay rule provides, "Business records made in the ordinary course of business at or near the time of the transaction involved are admissible as an exception to the hearsay rule if they are authenticated by a witness who is familiar with them and the system under which they are made." *State v. Wilson*, 313 N.C. 516, 533, 330 S.E.2d 450, 462 (1985).

**MOORE v. COACHMEN INDUSTRIES, INC.**

[129 N.C. App. 389 (1998)]

Mr. Pangburn made the following pertinent statements in his first affidavit:

> I am the Senior Corporate Attorney of [defendant Coachmen]. Prior to [defendant Sportscoach's] corporate dissolution in 1995, I held the same position with both [defendants] Sportscoach and Coachmen. I have custody and access to the business records of [defendant] Sportscoach relating to [plaintiffs'] vehicle[,] which is the subject of the instant action . . . .

> I am familiar with the system by which . . . Sportscoach records were generated. The entries in these records were made in the regular course of [defendant] Sportscoach's business[,] at or near the time of the events recorded[, and] based upon the personal knowledge of the person making them, or upon information transmitted by the person with knowledge.

> . . .

> It was the regular business practice of [defendant] Sportscoach to require the dealer to deliver and have signed the Warranty Registration and pre-delivery and acceptance declaration, and to deliver the Owners Manual and the New Recreational Vehicle Limited Warranty and other information about the Sportscoach warranty before or contemporaneously with the delivery and sale of the vehicle to the dealer's customer. That this practice was followed with respect to the sale of the vehicle to the plaintiffs is confirmed by plaintiff Luther Deleon Moore's signature, certifying that all warranties were clearly explained to him.

In his second affidavit, Mr. Pangburn pertinently stated:

> Neither the Vehicle Service Contract nor the Covered Components brochure [(attached to Mr. Moore's 29 July 1996 affidavit)] were prepared, issued, administered, adopted or supervised by either [defendant] Sportscoach or [defendant] Coachmen. The Vehicle Service Contract declaration page is typical of service contracts offered by recreational vehicle dealers and third party financial institutions. Neither [defendant] Sportscoach nor [defendant] Coachmen offered any such service contract or extended service protection plan.

> [Plaintiffs'][v]ehicle was sold and delivered by [defendant] Sportscoach to Carolina County Recreational Vehicles, Inc., with

no service agreements or warranties other than as set forth in [defendant] Sportscoach's New Recreational Vehicle Limited Warranty, Sportscoach was a subsidiary of Coachmen, which had no role in the design, manufacture, building, assembly, distribution, or sale of [plaintiffs'] [v]ehicle. Neither [defendant] Sportscoach nor [defendant] Coachmen owned any shares of Carolina County Recreational Vehicles, Inc. on or after September 1989.

. . .

[D]efendants expect to present at trial, . . . the expert testimony of David Powell and Tom Fribley. Both of these gentlemen have examined the remains of [plaintiffs'] [v]ehicle and the power converter, and have expressed opinions that the fire was not caused by the power converter or the manner of insulating or mounting the power converter. The content of the expected testimony of Mr. Powell and Mr. Fribley is more fully described in . . . defendants' answers to plaintiffs' interrogatories.

As noted in Mr. Pangburn's second affidavit, the expected testimonies of defendants' expert witnesses, David Powell and Tom Fribley, regarding the cause of the fire that destroyed plaintiffs' recreational vehicle, was contained in defendants' answers to plaintiffs' interrogatories. The fact that Mr. Pangburn had been employed with defendant Coachmen and/or defendant Sportscoach since 1986 was also noted in defendants' answers to plaintiffs' interrogatories.

After a thorough review of the record, we conclude that Mr. Pangburn's affidavits were competent. Both of the affidavits were made upon his personal knowledge, acquired through review of his employer's business records. He attested to information known to him, or made known to him, in the course of his employment as corporate counsel of defendants Coachmen and Sportscoach. As hearsay, Mr. Pangburn's reference to matters to be presented at trial by others would have been disregarded by the trial court. Significantly, however, these matters had been included in defendants' answers to plaintiffs' interrogatories. Hence, those testimonies of defendants' experts were properly before the trial court in its consideration of defendants' motions for summary judgment. This argument, therefore, fails.

Plaintiffs' second argument that summary judgment was improperly granted for defendants is based upon the following contentions:

(1) that the affidavits of Mr. Pangburn were not competent to support an order of summary judgment; (2) that the statute of limitations does not bar this action; and (3) that the economic loss rule does not bar this action.

In light of the above conclusion that the affidavits of Mr. Pangburn are competent, we need not address plaintiffs' contention to the contrary. We, then, proceed to plaintiffs' argument that the trial court erred in granting defendants' motions for summary judgment where this action was timely filed within the applicable statute of limitations and repose.

## II. Statute of Limitations

North Carolina's Product Liability Act, N.C. Gen. Stat. § 99B-1, *et seq.*, provides that one who has suffered "personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, testing, listing, certifying, warning, instructing, marketing, selling, advertising, packaging, or labeling of any product," may institute a claim for products liability. N.C. Gen. Stat. § 99B-1 (1995). A products liability plaintiff may base the claim on various causes of action, including negligence (negligent design, manufacture, assembly, or failure to provide adequate warnings) and breach of warranty. The applicable statute of limitations is dependent upon the facts in each products liability case.

### A. Negligence Claims

[2] Generally, ordinary negligence cases are governed by a three-year statute of limitations, and the cause of action accrues at the time of injury. N.C. Gen. Stat. § 1-52(16) (1996). A cause of action for negligence "shall not accrue until bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs. Provided that no cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action." *Id.*

In the case *sub judice*, plaintiffs' claims for negligence (claims one and two) accrued on 6 November 1993, when their recreational vehicle and its contents were destroyed by fire. Their suit filed on 1 June 1995, was then timely filed as to plaintiffs' negligence claims.

MOORE v. COACHMEN INDUSTRIES, INC.

[129 N.C. App. 389 (1998)]

## B.  Breach of Warranty Claims

### 1.  Defendants Sportscoach and Coachmen

[3],[4] At the time of the purchase of the recreational vehicle, defendant Sportscoach gave plaintiffs a Limited Warranty, which states in pertinent part:

> Sportscoach Corporation of America will, for one year from the retail purchase date, or for the first 15,000 miles of use, whichever comes first, make repairs which are necessary because of defects in material or workmanship. We will repair or replace any defective part at no cost to you. . . .

> WE SHALL NOT BE LIABLE FOR INCIDENTAL OR CONSE-QUENTIAL DAMAGES, such as your expenses for transportation, lodging, loss or damage to your personal property, loss of use of your product, inconvenience, or loss of income. Some states do not allow exclusion or limitation of incidental or consequential damages, so the above limitation or exclusion may not apply to you.

> ********************

> IMPLIED WARRANTIES, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PUR-POSE, ARE LIMITED IN DURATION TO THE TERM OF THIS WRITTEN WARRANTY. Some states do not allow limitations on how long an implied warranty lasts, so the above limitation may not apply.

The limitations found in this warranty were effective for the following reasons: First, plaintiffs' contention that the service contract between themselves and a finance company somehow extends the limited warranty issued by defendant Sportscoach is without merit. Plaintiffs have not affirmatively shown any relationship between the service contract and defendant Sportscoach or defendant Coachmen. In addition, plaintiffs have failed to plead or otherwise demonstrate that the limitations found in the Limited Warranty are uncon-scionable, or otherwise invalid.

As this is not a case involving personal injury, plaintiffs do not enjoy the benefit of the presumption of unconscionability of a limita-tion of damages, but bear the burden of showing unconscionability. *Byrd Motor Lines v. Dunlop Tire and Rubber*, 63 N.C. App. 292, 297, 304 S.E.2d 773, 777 (1983). Although the term "unconscionable" is not

defined in North Carolina's version of the Uniform Commercial Code (UCC), this Court noted in *Billings v. Harris Co.*, 27 N.C. App. 689, 220 S.E.2d 361 (1975), *aff'd*, 290 N.C. 502, 226 S.E.2d 321 (1976), "Unconscionability relates to contract terms that are oppressive. It is applicable to one-sided provisions, denying the contracting party any opportunity for meaningful choice." *Id.* at 695, 220 S.E.2d at 366. As plaintiffs have failed completely to show that the limits imposed by the Limited Warranty are not applicable or unconscionable under these facts, we hold that defendant Sportscoach's Limited Warranty was effective to bar as untimely any claims for breach of express or implied warranties against defendants Sportscoach and its parent company, defendant Coachmen. *See Acceptance Corp. v. Spencer*, 268 N.C. 1, 149 S.E.2d 570 (1966) (stating that, generally, there is no vicarious liability under North Carolina law if the parent and subsidiary corporations are entirely separate legal entities and there is no showing of fraud). Accordingly, plaintiffs' fourth and fifth claims for relief for breach of express or implied warranties against defendants Coachmen and Sportscoach were barred by the language of the Limited Warranty, and summary judgment was proper as to those claims.

### 2. Defendant MagneTek

[5] We note that the liability of defendant MagneTek presents this Court with a novel question: whether a remote supplier/manufacturer of a component part, which is then integrated into a finished product, may be protected by a limited warranty which makes no express reference to coverage of that component supplier/manufacturer, or specifically, that part supplied by the component supplier/manufacturer. As discussed below, we answer in the affirmative.

Because there is no case law directly on point in this instance, we have extrapolated from some principles of law utilized in deciding warranty liability issues from other jurisdictions. In regards to the construction of express warranties and their coverage it has been explained, "When the buyer purchases an operating machine, the seller cannot claim that the defects were in component parts supplied by others and therefore not covered by the warranty." 67A Am. Jur. 2d Sales § 727 (1985) (citing *Polycon Industries, Inc. v. Hercules, Inc.*, 471 F. Supp. 1316 (E.D. Wis. 1979)). More pointedly, in regards to construction of warranty disclaimers, most jurisdictions require that a manufacturer seeking to disclaim implied warranties be able to point to a disclaimer which expressly mentions the manufacturer as

excluding certain or all implied warranties either by doing so in the materials it includes with the goods or by joining as a disclaiming seller in the contract between the retailer and the remote purchaser. Donald F. Clifford, *Express Warranty Liability of Remote Sellers: One Purchase, Two Relationships*, 75 Wash. U. L.Q. 413, 445-46 (1997). However, it has been noted that while a manufacturer may "effectively disclaim its warranty liability either by including a disclaimer in the materials that accompany the product or by insisting that the retailer include the manufacturer's disclaimer in the sales contract with the consumer," *Hininger v. Case Corp.*, 23 F.3d 124, 129 (citing *Clark v. DeLaval Separator Corp.*, 639 F.2d 1320 (5th Cir. 1981)), *reh'g denied*, 32 F.3d 568 (5th Cir. 1994), *cert. denied*, 513 U.S. 1079, 130 L. Ed. 2d 632 (1995), " 'it may be difficult or even impossible for a component supplier to disclaim its warranty liability.' " *Id.* (*quoting Patty Precision Products v. Brown & Sharpe Mfg.*, 846 F.2d 1247, 1257 (10th Cir. 1988) (Logan, J. concurring in part and dissenting in part)). The court in *Hininger* concluded that because component part suppliers cannot effectively disclaim implied warranties, and purchasers have no expectation that component part suppliers will respond to defects in finished products, a purchaser cannot recover for economic loss from a component supplier under breach of the implied warranty of merchantability. *Id.* at 129.

A component supplier's inability to disclaim implied warranties is particularly important in light of the abolition of the privity requirement in regards to implied warranty claims. The primary reason that the privity requirement was abolished in implied warranty actions was the manufacturer could limit unforeseeable and unlimited liability by disclaiming its implied warranties under the applicable state statutes. There are some large component suppliers who possess the economic control necessary to require that manufacturers include component part disclaimers with finished product literature or to require sellers to include component disclaimers in the purchaser's contract. For example, Intel and Motorola are component suppliers whose sales exceed ten billion dollars. *See* Christopher W. Weber, Note, *Purchaser of a Defective Product Cannot Recover Purely Economic Loss Against a Component Part Supplier of the Finished Product Under Tort or Breach of Implied Warranty Theories: Hininger v. Case Corp.*, 23 F.2d (5th Cir.), *cert. denied*, 115 S.Ct. 728 (1994), 26 Tex. Tech. L. Rev. 1287, 1325-27 (discussing the 1994 controversy surrounding an Intel computer chip malfunctioning, in regards to the *Hininger* analysis). However, in the case of most component part suppliers, this justification for the removal of the privity

requirement—the ability to effectively disclaim implied warranties—is noticeably absent.

For the above-mentioned reasons, we conclude that defendant MagneTek was, as a matter of law, covered by defendant Sportscoach's Limited Warranty, although there was no specific reference to defendant MagneTek or to its product, the power converter unit in that warranty. It would be inequitable to hold otherwise, as the Fifth Circuit Court of Appeals stated in *Shipco 2295, Inc. v. Avondale Shipyards, Inc.*, 825 F.2d 925 (5th Cir. 1987), *cert. denied*, 485 U.S. 1007, 99 L. Ed. 2d 701 (1988),

> The buyer ordinarily has no interest in how or where the manufacturer obtains individual components. The buyer is usually interested in the quality of the finished product and is content to let the manufacturer decide whether to do all the work or delegate part of it to others.

*Id.* at 929. In the instant case, plaintiffs bargained for a complete and functional recreational vehicle, not for wheels, electrical convertor box, stereo, etc. Thus, they had no reasonable expectation that MagneTek, or any of the other manufacturers of unbranded components, would resolve any problem they encountered with the vehicle. *See Hininger*, 23 F.3d at 127.

We hold, therefore, that plaintiffs' breach of the implied warranty of merchantability claim (third claim) against defendant MagneTek is also barred by the language of the Limited Warranty. In light of our conclusion in regard to the applicability of the Limited Warranty, all of plaintiffs' breach of warranty claims are time barred. With only plaintiffs' negligence claims against defendants surviving, we must next discuss the viability of these remaining claims under the economic loss doctrine.

### III. The Economic Loss Doctrine

[6] North Carolina has adopted the economic loss rule, which prohibits recovery for economic loss in tort. Instead, such claims are governed by contract law—in this case, the UCC. The courts have construed the term "economic losses" to include damages to the product itself. *See Ports Authority v. Roofing* Co., 294 N.C. 73, 240 S.E.2d 345 (1978); *Reece*, 110 N.C. App. 462, 429 S.E.2d 768. The rationale for the economic loss rule is that the sale of goods is accomplished by contract and the parties are free to include, or exclude, provisions as to the parties' respective rights and remedies, should

KEITH v. NORTHERN HOSP. DIST. OF SURRY COUNTY

[129 N.C. App. 402 (1998)]

the product prove to be defective. To give a party a remedy in tort, where the defect in the product damages the actual product, would permit the party to ignore and avoid the rights and remedies granted or imposed by the parties' contract. *See Reece*, 110 N.C. App. at 466-67, 429 S.E.2d at 770. Where a defective product causes damage to property other than the product itself, losses attributable to the defective product are recoverable in tort rather than contract. *Id.* at 467, 429 S.E.2d at 770.

The economic loss doctrine prevents plaintiffs from recovering on their negligence claim against defendants for the loss of their recreational vehicle. Further, the Limited Warranty prevents plaintiffs from recovering any incidental or consequential damages, "including loss or damage to their personal property." Hence, plaintiffs cannot recover for any damages on their negligence claim against defendants (claims one and two).

IV.  Conclusion

In sum, we hold that the affidavits of Michael Pangburn were properly admitted into evidence. We also hold that summary judgment was properly granted for defendants as to all of plaintiffs' claims. Accordingly, we affirm the order of the trial court.

Affirmed.

Judges EAGLES and MARTIN, John C., concur.