PETER T. AND LINDA BOOR, HUSBAND AND WIFE, PLAINTIFFS v. SPECTRUM HOMES, INC., A NORTH CAROLINA CORPORATION, DEFENDANT

No. COA08-888

(Filed 5 May 2009)

**Statutes of Limitation and Repose— construction of house— drainage problems—six-year statute of repose**

The trial court correctly granted summary judgment for defendant on claims arising from the construction of a house where plaintiffs filed their claims for breach of implied warranty of habitability, breach of express warranty, negligence per se, and unfair and deceptive trade practices seven years after the date of substantial completion, outside the six-year statute of repose. Plaintiffs did not allege any act by defendant after that date, nor any fraud or willful or wanton negligence. N.C.G.S. § 1-50(a)(5)(a).

Appeal by plaintiffs-homeowners from judgment entered 28 April 2008 by Judge Michael R. Morgan in Wake County Superior Court. Heard in the Court of Appeals 9 March 2009.

*Law Office of Matthew I. Van Horn, PLLC, Matthew I. Van Horn, for plaintiffs-appellants.*

*Lewis & Roberts, PLLC, by Daniel K. Bryson and Scott C. Harris, for defendants-appellees.*

MARTIN, Chief Judge.

Plaintiffs-appellants Peter T. and Linda Boor ("plaintiffs") appeal from an order granting summary judgment in favor of defendant-appellee Spectrum Homes ("defendant").

The documents in the record before the court established the following undisputed facts: On 7 June 1999, Evergreen Construction, Inc., an affiliate of defendant, received a building permit to construct a home at 1809 Kenwyck Manor Way in Raleigh, North Carolina. On 18 May 2000, the City of Raleigh Inspections Department issued a certificate of occupancy for the home, stating that the work performed under the permit had been found to be in substantial compliance with the applicable building codes. On 4 April 2001, defendant and G. Stephen Martin and Rebecca Martin ("the Martins") entered into a contract for the sale of the home. The sale was fi-

**BOOR v. SPECTRUM HOMES, INC.**

[196 N.C. App. 699 2009)]

nalized on 12 June 2001 and the Martins received a general warranty deed that day.

At the closing, defendant provided the Martins with an express warranty, entitled "Limited Warranty," to cover the construction of the home. The warranty provided in part:

> To Whom Given: This Warranty is extended to you as the purchaser of the home identified on the cover page of this Warranty and automatically to any subsequent owners.
>
> . . . .
>
> Coverage During First through Sixth Years: Your Builder warrants that during the second through sixth year of the commencement date: The home will be free from Major Structural Defects. A "Major Structural Defect" is actual physical damages to the following designated load-bearing portions of the home caused by failure of such load-bearing portions which affects their load-bearing functions to the extent that the home becomes unsafe, unsanitary or otherwise unlivable:
>
> 1. Foundation systems and footings;
>
> 2. Beams;
>
> 3. Girders;
>
> 4. Lintels;
>
> 5. Columns;
>
> 6. Walls and partitions;
>
> 7. Floor systems; and
>
> 8. Roof framing systems.
>
> Remedy: If a defect occurs in an item which is covered by this Warranty, you [sic] Builder will repair, replace, or pay you the reasonable cost of repairing or replacing the defective item. Your Builder's total liability under this Warranty is limited to the purchase price of the home stated on the cover sheet of this Warranty. The choice among repair, replacement, or payment is your Builder's. Steps taken to correct defects shall not act to extend the time of this Warranty.

A later section of the warranty provided that:

Repair of a Major Structural Defect is limited (1) to repair of the damage to the load-bearing elements of the home themselves which is necessary to restore their load-bearing ability; and (2) to the repair of those items of the home damaged but [sic] the Major Structural Defect which make the home unsafe, unsanitary or otherwise unlivable.

Damage to the following non-load bearing elements do [sic] not constitute a major structural defect (See Note 1).

a.  Roof shingles and sheathing;

b.  Dry wall and plaster;

c.  Exterior siding;

d.  Brick, stone or stucco veneer;

e.  Subfloor and flooring materials;

f.  Wall tile or other wall covering;

g.  Non-load bearing partitions;

h.  Concrete floors in attached garages and basements that are built separate from foundation walls or other structural elements of the home.

i.  Electrical, heating, cooling, ventilation, mechanical, and plumbing systems, appliances, equipment, fixtures, paint, doors, windows, trim, cabinet, hardware, and insulation.

On 20 October 2006, plaintiffs purchased the home from the Martins. On 8 December 2006, plaintiffs made a written request to defendant for Warranty Service under the "Limited Warranty" in regards to rotting apparently caused by water infiltration. Defendant responded to plaintiffs' request for Warranty Service by asserting that, upon inspection, the damage seemed to be caused by a non-structural component of the house and was therefore not covered by the "Limited Warranty." On 4 April 2007, plaintiffs made an additional written request for Warranty Service and offer for settlement. Having received no response, on 11 June 2007, plaintiffs filed a complaint against defendant alleging breach of implied warranty, breach of express warranty, negligence per se, and violations of the North Carolina Unfair and Deceptive Trade Practices Act, and sought $26,500.00 in damages. In their complaint, plaintiffs alleged that "severe water damage to the front areas of the home has been caused

by [defendant's] improper installation of exterior stone masonry components onto the wood frame and sheathed walls of the house." Plaintiffs further alleged that, because "[t]he stone masonry assemblies were installed [by defendant] with no direct path or other means by which water or moisture could drain, . . . it gathered against the wall cavities and at the lower portions of the wall and the structural framing of the home, causing the wood structural portions of the wall to rot." Subsequently, defendant filed an answer and motion to dismiss plaintiffs' claims, followed by a motion for summary judgment. Plaintiffs filed a memorandum in opposition to defendant's motion for summary judgment which provided in part:

> [A] survey of the damages completed by a consultant hired by plaintiff [sic] and numerous photographs taken by plaintiffs, and others, show convincingly that the damage to the plaintiff[s'] home involves structural damages. *See Vista Services Examination and Consultation Report* and Photographs submitted herewith. Moreover, issues such as the specific condition of the home are ripe for a trial, not for a summary judgment proceeding.

On 28 April 2008, the trial court, finding that there was "no genuine issue as to any material fact," entered an order granting summary judgment upon defendant's motion. Plaintiffs appeal from the order granting summary judgment.

---

Plaintiffs argue that there was a material question of fact as to their claims for breach of implied warranty of habitability, breach of express warranty, negligence per se, and violations of the North Carolina Unfair and Deceptive Trade Practices Act. As part of this argument, plaintiffs contend their claims were not barred by the six-year statute of repose under N.C.G.S. § 1-50(a)(5) or the statute of limitations applicable to each claim. For the reasons hereinafter stated, we affirm.

The standard of review on appeal from the granting of a motion for summary judgment is whether there is any genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. N.C. Gen. Stat. § 1A-1, Rule 56(c) (2007); *Willis v. Town of Beaufort*, 143 N.C. App. 106, 108, 544 S.E.2d 600, 603, *disc. review denied*, 354 N.C. 371, 555 S.E.2d 280 (2001). While "[e]vidence presented by the parties is viewed in the light most favorable to the non-movant," *Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003) (citing *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829,

BOOR v. SPECTRUM HOMES, INC.

[196 N.C. App. 699 2009)]

835 (2000)), the moving party has the burden of establishing the lack of any triable issue of fact. *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985). A defendant may show entitlement to summary judgment by (1) proving that an essential element of the plaintiff's case is non-existent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense. *James v. Clark*, 118 N.C. App. 178, 181, 454 S.E.2d 826, 828, *disc. review denied*, 340 N.C. 359, 458 S.E.2d 187 (1995). "Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a prima facie case at trial." *Gaunt v. Pittaway*, 139 N.C. App. 778, 784-85, 534 S.E.2d 660, 664 (2000) (citing *Moore v. Coachmen Indus., Inc.*, 129 N.C. App. 389, 394, 499 S.E.2d 772, 775 (1998)), *disc. review denied*, 353 N.C. 262, 546 S.E.2d 401 (2000), *cert. denied*, 353 N.C. 371, 547 S.E.2d 810, *cert. denied*, 534 U.S. 950, 151 L. Ed. 2d 261 (2001).

Our Supreme Court has articulated the difference between a statute of limitations and a statute of repose:

> . . . the period contained in the statute of repose begins when a specific event occurs, regardless of whether a cause of action has accrued or whether any injury has resulted. . . . Thus, the repose serves as an unyielding and absolute barrier that prevents a plaintiff's right of action even before his cause of action may accrue, which is generally recognized as the point in time when the elements necessary for a legal wrong coalesce.

*Black v. Littlejohn*, 312 N.C. 626, 633, 325 S.E.2d 469, 474-75 (1985) (internal citations omitted). As such, "[a] statute of repose creates an additional element of the claim itself which must be satisfied in order for the claim to be maintained." *Hargett v. Holland*, 337 N.C. 651, 654, 447 S.E.2d 784, 787 (citing *Bolick v. Am. Barmag Corp.*, 306 N.C. 364, 293 S.E.2d 415 (1982)), *reh'g denied*, 338 N.C. 672, 453 S.E.2d 177 (1994). "[A] plaintiff is required to plead and prove that the statute of repose is not a bar to the maintenance of the action." *Whittaker v. Todd*, 176 N.C. App. 185, 187, 625 S.E.2d 860, 862 (citing the holding in *Tipton & Young Constr. Co. v. Blue Ridge Structure Co.*, 116 N.C. App. 115, 117, 446 S.E.2d 603, 605 (1994), *aff'd per curiam*, 340 N.C. 257, 456 S.E.2d 308 (1995)), *disc. review denied*, 360 N.C. 545, 635

S.E.2d 62 (2006). "If the action is not brought within the specified period, the plaintiff 'literally has no cause of action. The harm that has been done is *damnum absque injuria*—a wrong for which the law affords no redress.'" *Tipton*, 116 N.C. App. at 117-18, 446 S.E.2d at 605 (quoting *Boudreau v. Baughman*, 322 N.C. 331, 340-41, 368 S.E.2d 849, 857 (1988)).

The statute of repose applicable to a claim arising out of an improvement to real property is set forth in N.C.G.S. § 1-50(a)(5)(a), which provides:

> No action to recover damages based upon or arising out of the defective or unsafe condition of an improvement to real property shall be brought more than six years from the later of the specific last act or omission of the defendant giving rise to the cause of action or substantial completion of the improvement.

N.C. Gen. Stat. § 1-50(a)(5)(a) (2007). N.C.G.S. § 1-50(a)(5)(a) thus "provides an outside limit of six years for bringing an action coming within its terms." *Whittaker*, 176 N.C. App. at 187, 625 S.E.2d at 861 (citing *Lamb v. Wedgewood S. Corp.*, 308 N.C. 419, 427-28, 302 S.E.2d 868, 873 (1983)). N.C.G.S. § 1-50(a)(5)(b) provides:

> For purposes of this subdivision, an action based upon or arising out of the defective or unsafe condition of an improvement to real property includes:

> 1. Actions to recover damages for breach of a contract to construct or repair an improvement to real property;

> 2. Actions to recover damages for negligent construction or repair of an improvement to real property;

> . . . .

> 4. Actions to recover damages for economic or monetary loss;

> 5. Actions in contract or in tort or otherwise;

N.C. Gen. Stat. § 1-50(a)(5)(b) (2007). N.C.G.S. § 1-50(5) is designed to limit the potential liability of architects, contractors, and perhaps others in the construction industry for improvements made to real property. *Lamb*, 308 N.C. at 427-28, 302 S.E.2d at 873. However, the six-year limitation prescribed by N.C.G.S. § 1-50(a)(5)(a) "shall not be asserted as a defense by any person who shall have been guilty of fraud, or willful or wanton negligence in . . . construction of an improvement to real property." N.C. Gen. Stat. § 1-50(a)(5)(e) (2007).

Under the statute, a plaintiff has the burden of showing that he or she brought the action within six years of either (1) the substantial completion of the house or (2) the specific last act or omission of defendant giving rise to the cause of action. *Nolan v. Paramount Homes, Inc.*, 135 N.C. App. 73, 76, 518 S.E.2d 789, 791 (1999) (citing *Sink v. Andrews*, 81 N.C. App. 594, 597, 344 S.E.2d 831, 833 (1986)), *disc. review denied*, 351 N.C. 359, 542 S.E.2d 214 (2000). The *Nolan* court added:

N.C.G.S. § 1-50(a)(5)(c) defines "substantial completion" as being "that degree of completion of a project, improvement or specified area or portion thereof upon attainment of which the owner can use the same for the purpose for which it was intended." An owner of a residential dwelling may use it as a residence when the appropriate government agency issues a final certificate of compliance. N.C.G.S. § 153A-363 (Supp. 1998); N.C.G.S. § 160A-423 (1994). The owner may then utilize the residence for the purpose which it was intended and the home is substantially completed under N.C.G.S. § 1-50(a)(5).

*Id.* This Court has also noted that, "since all liability has its genesis in the contractual relationship of the parties, an owner's claim arising out of defective construction accrues on completion of performance 'no matter how a claim is characterized in the complaint—negligence, malpractice, breach of contract.' " *Monson v. Paramount Homes, Inc.*, 133 N.C. App. 235, 241, 515 S.E.2d 445, 450 (1999) (quoting *City Sch. Dist. v. Stubbins & Assocs.*, 650 N.E.2d 399, 400-01).

Here, the City of Raleigh Inspections Department issued a certificate of occupancy for the home on 18 May 2000, stating that "work performed under this permit has been found to be in substantial compliance with applicable building codes." Under this certificate of compliance, an owner could utilize the property as a residence on that date. *See Nolan*, 135 N.C. App. at 76, 518 S.E.2d at 791; N.C.G.S. § 153A-363 (2007); N.C.G.S. § 160A-423 (2007). Plaintiffs have alleged no act by defendant after 18 May 2000, nor any fraud or willful or wanton negligence in defendant's construction of the home pursuant to N.C.G.S. § 1-50(a)(5)(e). As such, the date of "substantial completion" for purposes of N.C.G.S. § 1-50(a)(5)(c) was 18 May 2000. Because plaintiffs filed their claims for breach of implied warranty of habitability, breach of express warranty, negligence per se, and unfair and deceptive trade practices on 11 June 2007, they cannot prove that the six-year statute of repose is not a bar to the maintenance of this

action. N.C. Gen. Stat. § 1-50(a)(5)(a), (b); *see also Whittaker*, 176 N.C. App. at 187, 625 S.E.2d at 862. Accordingly, plaintiffs failed to raise any genuine issue of material fact, and the trial court correctly granted summary judgment on these claims.

Affirmed.

Judges WYNN and ERVIN concur.