NO. COA14-183

NORTH CAROLINA COURT OF APPEALS

Filed:  16 September 2014

TRILLIUM RIDGE CONDOMINIUM
ASSOCIATION, INC.,
    Plaintiff

v.

TRILLIUM LINKS & VILLAGE, LLC;
TRILLIUM CONSTRUCTION COMPANY LLC;
SHAMBURGER DESIGN STUDIO, P.C.,
SHAMBURGER DESIGN, INC. (fka
SHAMBURGER DESIGN STUDIO, INC.), S.C.
CULBRETH JR., GREGORY A. WARD,
    Defendants

Jackson County
No. 11 CVS 462

Appeal by plaintiff from orders entered 20 August 2013 and amended orders entered 12 September 2013 by Judge Marvin P. Pope, Jr., in Jackson County Superior Court.  Heard in the Court of Appeals 5 June 2014.

    *Kilpatrick Townsend & Stockton LLP, by Dustin T. Greene, David C. Smith, and Richard D. Dietz, for Plaintiff.*

    *Hedrick Gardner Kincheloe & Garofalo, LLP, by Luke Sbarra, for Defendant Trillium Links & Village, LLC.*

    *Marc J. Meister, PLLC, by Marc J. Meister, for Defendant Trillium Construction Company, LLC.*

    *Northup, McConnell & Sizemore, P.L.L.C., by Robert E. Allen, for Defendants Ward and Culbreth.*

ERVIN, Judge.

Plaintiff Trillium Ridge Condominium Association, Inc., appeals from orders and amended orders granting summary judgment in favor of Defendants Trillium Construction Company, LLC; Trillium Links & Village, LLC; and S.C. Culbreth, Jr., and Gregory A. Ward. On appeal, Plaintiff argues that Defendants' motions for summary judgment should have been denied for the following reasons: (1) Trillium Construction's motion for summary judgment was filed in an untimely manner; (2) Plaintiff's claims are not time-barred; (3) Mr. Culbreth and Mr. Ward breached the fiduciary duty that they owed to Plaintiff; (4) Trillium Links breached the fiduciary duties that it owed to Plaintiff; (5) Trillium Construction and Trillium Links constructed the condominiums in a negligent manner; (6) Trillium Links is liable for breach of warranty; (7) claims based on defects in buildings 100 and 200 are not barred by the applicable statute of repose; (8) summary judgment based on contributory negligence was improper; and (9) Trillium Construction's failure to mitigate its damages does not support an award of summary judgment.[1] After careful consideration of

---

[1]Trillium Construction has not defended any rulings that the trial court may have made in its favor based on contributory negligence and failure to mitigate damages for purposes of this appeal. As a result of the fact that the record does not support a determination that Plaintiff was contributorily negligent as a matter of law and the fact that a failure to mitigate damages is a defense to the size of a damage award

Plaintiff's challenges to the trial court's orders in light of the record and the applicable law, we conclude that the trial court's orders and amended orders should be affirmed in part and reversed in part and that this case should be remanded to the Jackson County Superior Court for further proceedings not inconsistent with this opinion.

## I. Factual Background

## A. Substantive Facts

The Trillium Development is a private residential, lake, and golf community located in Cashiers. The Trillium Development was founded in 1996 and consists of approximately 270 private residences, including homes, townhouses, and condominiums. Trillium Ridge Condominiums, the subject of this appeal, is one of several condominium complexes located in the Trillium Development. The Trillium Ridge Condominiums consist of 22 individual units contained in six buildings identified as Building Nos. 100, 200, 300, 400, 500, and 600 and multiple common elements. The Trillium Ridge Condominiums were constructed in two phases, with Building Nos. 100 and 200 having

---

rather than a bar to liability, the trial court's decision to grant summary judgment in favor of Trillium Construction cannot be affirmed on the basis of either contributory negligence or any failure on Plaintiff's part to take appropriate steps to mitigate its damages.

been constructed during the first phase and Buildings Nos. 300 through 600 having been constructed during the second phase.

Trillium Links, the developer of Trillium Ridge, filed a Declaration for the Trillium Ridge Condominiums on 12 February 2004. Trillium Links was owned and controlled by Mr. Culbreth and Mr. Ward along with two other individuals, Dan Rice and Morris Hatalsky.[2] During the period of construction, Mr. Culbreth and Mr. Ward held the principal ownership interests in Trillium Links. The Declaration allowed Trillium Links, as developer-declarant, the right to appoint officers to Plaintiff's executive board. As a result, Trillium Links appointed Mr. Culbreth and Mr. Ward to serve as Plaintiff's sole initial officers and directors, and they continued to act in that capacity until Trillium Links turned control of Plaintiff over to the unit owners on 24 February 2007.

Trillium Construction was solely owned by Mr. Rice, who also owned a minority interest in Trillium Links.[3] Trillium Links and Trillium Construction operated out of the same offices and used the same mailing address, phone number, and website.

---

[2]Mr. Rice was a building contractor who served as the sole member and manager of Trillium Construction. Mr. Hatalsky is a golf course designer.

[3]Mr. Rice died in May 2008, leaving Trillium Construction without a member or manager. As of April 2013, Trillium Construction had been dissolved.

In 2003, Trillium Links hired Trillium Construction to serve as the general contractor for the construction of the Trillium Ridge Condominiums. Although Trillium Links and Trillium Construction executed a contract providing for the construction of each building, the contract documents have not been located and are presumed to have been destroyed as a result of water damage.

In October 2004, a report from Structural Integrity Engineering, P.A., was delivered to Trillium Construction and to Mr. Culbreth and Mr. Ward individually. According to the Structural Integrity report, a failure to install two foundation piers in Building No. 100 had resulted in a sagging floor. Although Structural Integrity confirmed that these piers were replaced in 2005, it noted that its report "should not be construed as an implication that there are no deficiencies or defects at other locations in this structure."

On 24 February 2007, Trillium Links turned over control of Plaintiff to the unit owners. No information regarding the foundation problems in Building No. 100 or the Structural Integrity report was disclosed to the new board. After control had been transferred to the unit owners, Plaintiff decided to study future maintenance requirements and commissioned Miller+Dodson to perform a reserve study for the condominiums.

According to the Miller+Dodson report, the condominiums' wooden siding had a shorter remaining economic life than Plaintiff had anticipated given the type of siding that had been installed.

After receiving the Miller+Dodson report, Plaintiff asked Freddie Boan, the Association's secretary and a Trillium Links employee, to retain an expert for the purpose of providing a second opinion concerning the expected useful life of the wooden siding. As a result, Mr. Boan hired Andy Lee, a professor of forest products at Clemson University, to inspect the siding. On 5 November 2007, Professor Lee delivered a report to Plaintiff in which he discussed certain siding-related issues, including the fact that "some metal flashings are either too narrow or missing, which require immediate corrections." In addition, Professor Lee noted that, at many locations, the bottoms of the siding pieces either touched or were too close to the ground and recommended that this problem be corrected. Finally, Professor Lee concluded that, if the problems were corrected, the wood sidings should last "thirty (30) years or longer."

According to Mr. Boan, all of the members of Plaintiff's board received the Lee Report and were made aware of the flashing defects. Upon receiving the Lee Report, James Tenney, who had been elected to the board after control of the

development had been transferred to Plaintiff, talked about the situation with Mr. Boan. After discussing the available options with Professor Lee, Mr. Boan decided that the existing problems could be remedied by continuously caulking over the problematic flashings. In addition, Mr. Boan reached the conclusion that Plaintiff did not need to procure additional inspections of the buildings. As a result, Plaintiff had the problematic flashings caulked over "either prior to or at the time we did the painting in March of 2008."

In approximately October 2010, leaks were discovered in Building Nos. 100 and 300. Upon further investigation, extensive water damage and rotting was discovered. The similarity between the leaks in the two buildings led Mr. Boan to advise Mr. Tenney that the problem might not be a localized one. As a result, Mr. Tenney hired an engineer to inspect the property. On 19 October 2010, Sydney E. Chipman, P.E., submitted a report detailing his findings concerning the condition of Building No. 100. In his report, Mr. Chipman indicated that "[i]mproper flashing details at the doors, windows, and horizontal transitions" had caused serious water damage and that these defects were "probably endemic throughout the community." Subsequent inspections disclosed the existence

of numerous defects in the original construction of the condominium buildings.

## B. Procedural History

On 3 August 2011, Plaintiff filed a complaint against Trillium Links; Trillium Construction; Mr. Culbreth; Mr. Ward; Shamburger Design Studio, P.C.; and Shamburger Design, Inc.[4] In its complaint, Plaintiff asserted claims for breach of warranty against Trillium Links; negligent construction against Trillium Links, Trillium Construction, and the Shamburger Defendants; gross negligence against Trillium Links; and breach of fiduciary duty against Mr. Culbreth, Mr. Ward, and Trillium Links. On 6 October 2011, 10 October 2011, and 12 December 2011, respectively, Mr. Culbreth and Mr. Ward, Trillium Links, and Trillium Construction filed answers in which they denied the material allegations of Plaintiff's complaint and asserted various affirmative defenses.

On 9 October 2012, Trillium Construction filed a motion seeking partial summary judgment in its favor with respect to all negligent construction claims relating to Building Nos. 100 and 200. On 18 January 2013, Trillium Construction withdrew its partial summary judgment motion based upon the expectation that

_____

[4]The Shamburger defendants were involved in designing the condominium buildings. Shamburger Design Studio was never served and an entry of default was made against Shamburger Design on 9 January 2012.

the Chief Justice would designate this case as exceptional pursuant to Rule 2.1 of the General Rules of Practice. On 8 March 2013, the Chief Justice designated this case as exceptional and transferred responsibility for it to the trial court.

On 1 July 2013, Mr. Culbreth and Mr. Ward filed motions for summary judgment, or in the alternative, partial summary judgment. On 22 July 2013, Trillium Links filed a motion for summary judgment. On 9 August 2013, Trillium Construction filed a revised motion for summary judgment. On 14 August 2013, Plaintiff filed materials in opposition to these summary judgment motions. On 16 August 2013, Plaintiff filed a response to Trillium Construction's summary judgment motion.

The pending summary judgment motions came on for hearing before the trial court at the 19 August 2013 civil session of the Jackson County Superior Court. On 20 August 2013, the trial court entered orders granting summary judgment in favor of Mr. Culbreath, Mr. Ward, Trillium Construction, and Trillium Links with respect to all of Plaintiff's claims and granting partial summary judgment in favor of Trillium Construction with respect to Plaintiff's claims relating to Building Nos. 100 and 200. On 12 September 2013, the trial court entered amended orders granting summary judgment in favor of Mr. Culbreath, Mr. Ward,

Trillium Construction, and Trillium Links, granting partial summary judgment in favor of Trillium Construction, and certifying its order for immediate review pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b). On 18 September 2013, Plaintiff noted an appeal to this Court from the trial court's orders and amended orders.[5]

## II. Substantive Legal Analysis

On appeal, Plaintiff argues that the trial court erred by granting Defendants' summary judgment motions. More specifically, Plaintiff argues that Trillium Construction's motion for summary judgment was untimely; that Plaintiff's claims are not barred by the applicable statute of limitations or statute of repose; and that the evidentiary forecast presented for the trial court's consideration established that Mr. Culbreth and Mr. Ward had breached a fiduciary duty owed to Plaintiff, that Trillium Links had breached a fiduciary duty owed to Plaintiff, and that Trillium Construction and Trillium Links had negligently constructed the condominium buildings. We will address each of Plaintiff's arguments in turn.

## A. Standard of Review

---

[5]As a result of the fact the trial court properly certified its orders for immediate appellate review pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b), the fact that Plaintiff's appeal has been taken from an interlocutory order is no bar to our consideration of this case on the merits.

"A trial court appropriately grants a motion for summary judgment when the information contained in any depositions, answers to interrogatories, admissions, and affidavits presented for the trial court's consideration, viewed in the light most favorable to the non-movant, demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Williams v. Houses of Distinction, Inc.*, 213 N.C. App. 1, 3, 714 S.E.2d 438, 440 (2011). As a result, in order to properly resolve the issues that have been presented for our review in this case, we are required to "determine, on the basis of the materials presented to the trial court, whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law." *Coastal Plains Utils., Inc. v. New Hanover Cty.*, 166 N.C. App. 333, 340, 601 S.E.2d 915, 920 (2004). "Both before the trial court and on appeal, the evidence must be viewed in the light most favorable to the non-moving party and all inferences from that evidence must be drawn against the moving party and in favor of the non-moving party." *White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 296, 603 S.E.2d 147, 157 (2004), *disc. review denied*, 359 N.C. 286, 610 S.E.2d 717 (2005). "'When there are factual issues to be determined that relate to the defendant's duty, or when there

are issues relating to whether a party exercised reasonable care, summary judgment is inappropriate.'" *Holshouser v. Shaner Hotel Grp. Properties One Ltd. P'ship*, 134 N.C. App. 391, 394, 518 S.E.2d 17, 21 (1999) (quoting *Ingle v. Allen*, 71 N.C. App. 20, 26, 321 S.E.2d 588, 594 (1984), *disc. review denied*, 313 N.C. 508, 329 S.E.2d 391 (1985), *overruled in part on other grounds in N.C. Dept. of Transp. v. Rowe*, 351 N.C. 172, 177, 521 S.E.2d 707, 710 (1999)), *aff'd*, 351 N.C. 330, 524 S.E.2d 568 (2000). We review orders granting or denying summary judgment using a *de novo* standard of review, *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008), under which "this Court 'considers the matter anew and freely substitutes its own judgment for that of the [trial court].'" *Burgess v. Burgess*, 205 N.C. App. 325, 327, 698 S.E.2d 666, 668 (2010) (quoting *In re Appeal of the Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

## B. Timeliness

As an initial matter, Plaintiff contends that Trillium Construction's summary judgment motion was untimely. Although Trillium Construction acknowledges having failed to provide notice of its effort to obtain summary judgment in its favor in a timely manner, it contends that Plaintiff has waived the right

to object to the lack of timely notice.  Trillium Construction's argument is persuasive.

Pursuant to N.C. Gen. Stat. § 1A-1, Rule 56(c), a motion for summary judgment must be served at least ten days before the time fixed for hearing.  N.C. Gen. Stat. § 1A-1, Rule 56(c).  In the event that service is effectuated by mail, three days must be added to the prescribed notice period.  N.C. Gen. Stat. § 1A-1, Rule 6(e).  However, "[t]he notice required by [N.C. Gen. Stat. § 1A-1,] Rule 56(c) of the North Carolina Rules of Civil Procedure may be waived 'by participation in the hearing and by a failure to object to the lack of notice or failure to request additional time by the non-moving party.'"  *Patrick v. Ronald Williams, Prof'l Ass'n*, 102 N.C. App. 355, 367, 402 S.E.2d 452, 459 (1991) (quoting *Westover Products v. Gateway Roofing*, 94 N.C. App. 163, 166, 380 S.E.2d 375, 377 (1989)).

As a result of the fact that Trillium Construction mailed its summary judgment motion on 9 August 2013 and the fact that the hearing on that motion was scheduled for 19 August 2013, Trillium Construction concedes, as it must, that it failed to serve its summary judgment motion in a timely manner.  At the beginning of the summary judgment hearing, Plaintiff informed the trial court that Trillium Construction had failed to serve its summary judgment motion in accordance with the statutorily

prescribed deadline. However, Plaintiff did not object to the adequacy of the notice that it had received or request additional time within which to respond to Trillium Construction's motion, participated in the hearing, and addressed the issues raised by Trillium Construction's motion on the merits.[6] As a result of Plaintiff's failure to object to the lack of notice or to request additional time and its decision to participate in the hearing, *Patrick*, 102 N.C. App. at 367, 402 S.E.2d at 459, Plaintiff waived the right to object to Trillium Construction's summary judgment motion on notice-related grounds. As a result, the trial court's decision to grant summary judgment in Trillium Construction's favor should not be disturbed on timeliness grounds.

### C. Negligent Construction Claims

Next, Plaintiff argues that the trial court erred by granting summary judgment in favor of Trillium Links and Trillium Construction on the grounds that Trillium Links and Trillium Construction were negligent, and that Trillium Links was grossly negligent, during the construction of the condominiums. Although Plaintiff's gross negligence claim lacks merit, the trial court erred by granting summary judgment in

---

[6]Although Plaintiff mentioned the timeliness issue in its rebuttal argument before the trial court, it conceded that "we've addressed the issues."

favor of Trillium Links and Trillium Construction with respect to Plaintiff's negligent construction claims.

## 1. Finding of Liability

### a. Negligence

"To state a claim for common law negligence, a plaintiff must allege:  (1) a legal duty; (2) a breach thereof; and (3) injury proximately caused by the breach." *Stein v. Asheville City Bd. Of Educ.*, 360 N.C. 321, 328, 626 S.E.2d 263, 267 (2006).  "'In the absence of a legal duty owed to the plaintiff by [the defendant], [the defendant] cannot be liable for negligence.'" *Id.* (quoting *Cassell v. Collins*, 344 N.C. 160, 163, 472 S.E.2d 770, 772 (1996), *overruled on other* grounds *by Nelson v. Freeland*, 349 N.C. 615, 631-32, 507 S.E.2d 882, 892 (1998)).

According to Trillium Links, a developer does not owe a legal duty to a condominium unit purchaser and cannot, for that reason, be held liable for negligence.  In support of this assertion, Trillium Links notes that Plaintiff has not cited any support for its contention that such a duty exists.  On the other hand, Plaintiff points out that the Building Code "'imposes liability on any person who constructs, supervises construction, or designs a building or alteration thereto, and violates the Code such that the violation proximately causes

injury or damage,'" *Lassiter v. Cecil*, 145 N.C. App. 679, 684, 551 S.E.2d 220, 223 (quoting *Olympic Products Co. v. Roof Systems, Inc.*, 88 N.C. App. 315, 329, 363 S.E.2d 367, 375, *disc. review denied*, 321 N.C. 744, 366 S.E.2d 863 (1988)), *disc. review denied*, 354 N.C. 363, 556 S.E.2d 302 (2001), and that a violation of the Building Code constitutes negligence *per se*. *Oates v. Jag, Inc.*, 314 N.C. 276, 280, 333 S.E.2d 222, 225 (1985). As a result, any person responsible for supervising a construction project is subject to being held liable on a negligent construction theory.

According to Plaintiff, the record contains evidence tending to show that Trillium Links supervised the construction of the Trillium Ridge condominiums. More specifically, Plaintiff notes that Trillium Links hired Neill Dalrymple to work on the Trillium Ridge condominium construction project; that Mr. Dalrymple's "Construction duties & responsibilities" made him "[r]esponsible & accountable" for the Trillium Ridge project, among others; and that Mr. Dalrymple "ha[d] the authority to stop any construction activity at any time to clear up any misunderstandings or expectations or under other terms when he acts on behalf of [Trillium Links]." According to Mr. Culbreth, if Mr. Dalyrmple "knowingly saw something that was wrong[,] he could stop it just like a QA, QC officer." In

addition, Trillium Links charged Trillium Construction more than $80,000.00 for acting as an "Asst Project Manager" during the construction of Buildings 100 and 200. As Plaintiff suggests, this evidence, when viewed in the light most favorable to Plaintiff, is sufficient to establish the existence of a genuine issue of material fact concerning the extent to which Trillium Links supervised the construction project and whether Trillium Links could lawfully be held liable for negligent construction based upon alleged Building Code violations.

In seeking to persuade us to reach a different result, Trillium Links argues, in reliance upon *Lassiter*, that, even if it were required to adhere to the Building Code, the fact that a Code violation occurred did not establish the existence of a legally effective duty of care. *Lassiter* does not, however, control the present issue given that the plaintiffs in that case never came under the protection of the Building Code because their house was never completed. *Lassiter*, 145 N.C. App. at 684, 551 S.E.2d at 223-24. As a result, since persons responsible for supervising construction are obligated to comply with the Building Code and since the necessity for compliance with the Building Code clearly creates a compliance obligation applicable to supervisory personnel, we hold that the trial

court erred by granting summary judgment in Trillium Links' favor with respect to the negligent construction issue.

### b. Gross Negligence

In addition, Plaintiff argues that Trillium Links is liable for gross negligence, which consists of "wanton conduct done with conscious or reckless disregard for the rights and safety of others." *Parish v. Hill*, 350 N.C. 231, 239, 513 S.E.2d 547, 551 (1999). "An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." *Yancey v. Lea*, 354 N.C. 48, 52, 550 S.E.2d 155, 157 (2001) (citations omitted). Aside from simply asserting that Trillium Links acted in a grossly negligent fashion, however, Plaintiff has not pointed to any specific act or omission on the part of Trillium Links which it contends to have been grossly negligent. As a result, given Plaintiff's failure to identify any act or omission on the part of Trillium Links that was "done with conscious or reckless disregard for the rights and safety of others," *Parish*, 350 N.C. at 239, 513 S.E.2d at 551, we conclude that the trial court did not err by granting summary judgment in favor of Trillium Links with respect to Plaintiff's gross negligence claim.

### 2. Statute of Limitations and Repose

### a. Statute of Limitations

Next, Trillium Links and Trillium Construction argue that, even if they owed a legally recognized duty to Plaintiff, Plaintiff's negligent construction claim was barred by the applicable statute of limitations. Plaintiff, on the other hand, contends that the record reflects the existence of genuine issues of material fact concerning the date upon which its negligent construction claims against Trillium Links and Trillium Construction accrued for purposes of the statute of limitations. We believe that Plaintiff has the better of this disagreement.

"The statute of limitations having been pled, the burden is on the plaintiff to show that his cause of action accrued within the limitations period." *Crawford v. Boyette*, 121 N.C. App. 67, 70, 464 S.E.2d 301, 303 (1995), *cert. denied*, 342 N.C. 894, 467 S.E.2d 902 (1996). "As a general proposition, an order [granting summary judgment] based on the statute of limitations is proper when, and only when, all the facts necessary to establish the limitation are alleged or admitted, construing the non-movant's pleadings liberally in his favor and giving him the benefit of all relevant inferences of fact to be drawn therefrom." *Williams*, 213 N.C. App. at 4, 714 S.E.2d at 440 (internal quotations omitted). On the other hand, when the evidence "is sufficient to support an inference that the

limitations period has not expired, the issue should be submitted to the jury." *Hatem v. Bryan*, 117 N.C. App. 722, 724, 453 S.E.2d 199, 201 (1995).

Negligent construction claims resulting from physical damage to the plaintiff's property are subject to the three year statute of limitations set out in N.C. Gen. Stat. § 1-52(16), with such claims accruing when "bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs." *Lord v. Customized Consulting Specialty, Inc.*, 182 N.C. App. 635, 643, 643 S.E.2d 28, 33 (quoting N.C. Gen. Stat. § 1-52(16)), *disc. review denied*, 361 N.C. 694, 652 S.E.2d 647 (2007). In support of their contention that Plaintiff's negligent construction claims are time-barred, Trillium Links and Trillium Construction argue that Plaintiff had actual notice of the existence of construction defects, consisting of missing or inadequate flashings, in the condominium buildings as of 5 November 2007, when the Lee Report was delivered.

As we have already noted, the Lee Report pointed out that "[s]ome metal flashings are either too narrow or missing, which require immediate corrections" and that "some bottom pieces of wood sidings in many locations either touched the ground or are

too close to the ground." On the other hand, Dr. Lee expressed the "opinion that these wood sidings are in good to excellent condition, with the exceptions of the problems outlined in the above observations," and stated that, in the event that the problems delineated in the report were to be corrected, the sidings should last "thirty (30) years or longer." According to Trillium Links and Trillium Construction, this information provided Plaintiff with notice that the Trillium Ridge condominiums suffered from construction defects sufficient to put Plaintiff on notice of the negligent construction claims that have been asserted in this case and triggering the running of the applicable statute of limitations with respect to those claims.

On the other hand, Plaintiff argues that the problems outlined in the Lee Report were corrected and that it did not have notice of the problems that prompted the assertion of the present claims until 2010, at which point Plaintiff hired an engineer and discovered the existence of extensive problems in other condominium buildings. According to the evidentiary forecast upon which Plaintiff relies in support of this contention, Mr. Tenney, acting in his capacity as President of Plaintiff's board, reviewed the Lee Report, informed his colleagues about the flashing problems outlined in that

document, and obtained their agreement that the continuous caulking approach recommended by Professor Lee should be adopted. In addition, the record reflects that Mr. Boan did not believe, after learning of the flashing-related defects, that any additional investigation was necessary. Mr. Tenney testified that neither Mr. Boan nor Mr. Lee ever advised Plaintiff that there was any reason to conduct a more extensive investigation concerning the possibility that there were defects in the other buildings at that time. Finally, Plaintiff notes that multiple construction defects outlined in its complaint bore no relation to the flashing problems discussed in the Lee Report. We believe that this evidence, when viewed in the light most favorable to Plaintiff, demonstrates the existence of a genuine issue of material fact concerning the extent, if any, to which the negligent construction claim that Plaintiff seeks to assert against Trillium Links and Trillium Construction accrued more than three years before the date upon which the complaint was filed. As a result, the trial court erred by granting summary judgment with respect to Plaintiff's negligent construction claims in favor of Trillium Links and Trillium Construction on statute of limitations grounds.

### b. Statute of Repose

Next, Plaintiff argues that the statute of repose set out in N.C. Gen. Stat. § 1-50(a)(5)(a) does not bar Plaintiff's negligent construction claims relating to Building Nos. 100 and 200 against Trillium Construction and Trillium Links.[7] N.C. Gen. Stat. § 1-50(a)(5)(a) provides that "[n]o action to recover damages based upon or arising out of the defective or unsafe condition of an improvement to real property shall be brought more than six years from the later of the specific last act or omission of the defendant giving rise to the cause of action or substantial completion of the improvement," N.C. Gen. Stat. § 1-50(a)(5)(a), with an action based upon or arising out of the defective or unsafe condition of an improvement to real property "[f]or purposes of this subdivision" having been defined to include an "[a]ction[] to recover damages for negligent construction or repair of an improvement to real property." N.C. Gen. Stat. § 1-50(a)(5)(b)(2). "'[N.C. Gen. Stat. § 1-50(a)(5)(a)] is a statute of repose and provides an outside limit of six years for bringing an action coming within its terms.'" *Roemer v. Preferred Roofing, Inc.*, 190 N.C. App. 813, 815, 660 S.E.2d 920, 923 (2008) (quoting *Whittaker v. Todd*, 176 N.C. App. 185, 187, 625 S.E.2d 860, 861, *disc. rev. denied*, 360

[7]As a result of the fact that the claims that Plaintiff has asserted against them sound in breach of fiduciary duty rather than defective construction, Mr. Culbreth and Mr. Ward have not asserted a statute of repose defense in their brief.

N.C. 545, 635 S.E.2d 62 (2006)).  A statute of repose "is a substantive limitation that establishes a time frame in which an action must be brought to be recognized."  *Bryant v. Don Galloway Homes, Inc.*, 147 N.C. App. 655, 657, 556 S.E.2d 597, 600 (2001).  As a result, given that the negligent construction claims that Plaintiff has asserted against Trillium Links and Trillium Construction seek recovery arising from an allegedly defective or unsafe improvement to real property, those claims come within the ambit of N.C. Gen. Stat. § 1-50(a)(5)(a).

"Unlike an ordinary statute of limitations which begins running upon accrual of the claim, the period contained in the statute of repose begins when a specific event occurs, regardless of whether a cause of action has accrued or whether any injury has resulted."  *Black v. Littlejohn*, 312 N.C. 626, 633, 325 S.E.2d 469, 474-75 (1985) (internal citations omitted). "Under the statute, a plaintiff has the burden of showing that he or she brought the action within six years of either (1) the substantial completion of the house or (2) the specific last act or omission of defendant giving rise to the cause of action." *Boor v. Spectrum Homes, Inc.*, 196 N.C. App. 699, 705, 675 S.E.2d 712, 716 (2009).  In the event that Plaintiff fails to establish that it had asserted its claim before the expiration of the statute of repose, its claim is "insufficient as a matter of

law." *Chicopee, Inc. v. Sims Metal Works, Inc.*, 98 N.C. App. 423, 426, 391 S.E.2d 211, 213, *disc. review denied*, 327 N.C. 426, 395 S.E.2d 674 (1990).

### i. Substantial Completion

As an initial matter, Trillium Links and Trillium Construction contend that Plaintiff has failed to bring its claim related to Building Nos. 100 and 200 within six years of the date upon which those buildings were substantially completed. N.C. Gen. Stat. § 1–50(a)(5(c) defines "substantial completion" as being "that degree of completion of a project, improvement or specified area or portion thereof . . . upon attainment of which the owner can use the same for the purpose for which it was intended." N.C. Gen. Stat. § 1–50(a)(5)(c). As this Court had previously held, a building is "substantially complete" on the date upon which a certificate of occupancy has been issued. *Boor*, 196 N.C. App. at 705, 675 S.E.2d at 716 (finding that the date of substantial completion for purposes of N.C. Gen. Stat. § 1–50(a)(5) was the date upon which the certificate of occupancy was issued); *Nolan v. Paramount Homes, Inc.*, 135 N.C. App. 73, 76, 518 S.E.2d 789, 791 (1999) (holding that a house was substantially completed for purposes of N.C. Gen. Stat. § 1–50(a)(5) upon the issuance of a certificate of compliance), *disc. review denied*, 351 N.C. 359, 542 S.E.2d 214

(2000). According to the record developed before the trial court, certificates of occupancy were issued for Building No. 100 between 17 August and 23 August 2004 and for Building No. 200 between 11 February and 30 March 2004. As a result of the fact that Building Nos. 100 and 200 were substantially completed nearly seven years before Plaintiff commenced this action on 3 August 2011, Plaintiff failed to assert its negligent construction claim within six years of the date upon which Building Nos. 100 and 200 were substantially completed.

## ii. Last Act or Omission

According to Plaintiff, Trillium Construction's last act with respect to Building No. 200 occurred when it repaired Mr. Tenney's deck in 2006. Although the expression "last act or omission" has not been statutorily defined, this Court has stated that, "[i]n order to constitute a last act or omission, that act or omission must give rise to the cause of action." *Nolan*, 135 N.C. App. at 79, 518 S.E.2d at 793. As a result, although an act sufficient to affect the running of the statute of repose may occur after the date of substantial completion, "a 'repair' does not qualify as a 'last act' under N.C. Gen. Stat. § 1-50(5) unless it is required under the improvement contract by agreement of the parties" given that "allow[ing] the statute of repose to toll or start running anew each time a repair is

made would subject a defendant to potential open-ended liability for an indefinite period of time, defeating the very purpose of statutes of repose such as N.C. Gen. Stat. § 1-50(5)." *Monson v. Paramount Homes, Inc.*, 133 N.C. App. 235, 240-41, 515 S.E.2d 445, 449-50 (1999). Even so, Plaintiff argues that, since the original construction contract was never produced, the repairs to Mr. Tenney's deck might have been required as part of the original contract and, therefore, could qualify as a "last act" for statute of repose purposes. However, given that Plaintiff "has the burden of showing that he or she brought the action within six years of . . . the specific last act or omission of defendant giving rise to the cause of action," *Boor*, 196 N.C. App. at 705, 675 S.E.2d at 716, we are unable to accept this contention. As a result, we have no basis for determining that the "last act" underlying Plaintiff's negligent construction claims occurred later than the date of substantial completion.

### iii. Possession or Control

Finally, Plaintiff argues that Trillium Links and Trillium Construction are not entitled to rely upon N.C. Gen. Stat. § 1-50(a)(5)(a) on the grounds that they retained "possession or control" over the condominium buildings. According to N.C. Gen. Stat. § 1-50(a)(5)(d), the statute of repose "shall not be asserted as a defense by any person in actual possession or

control, as owner, tenant or otherwise, of the improvement at the time the defective or unsafe condition constitutes the proximate cause of the injury or death for which it is proposed to bring an action, in the event such person in actual possession or control either knew, or ought reasonably to have known, of the defective or unsafe condition." N.C. Gen. Stat. § 1-50(a)(5)(d). As the Supreme Court has stated, "the purpose of the exclusion" is to impose a continuing duty "to inspect and maintain" on persons who, after having constructed an improvement, remain in possession of and control over that improvement. *Cage v. Colonial Bldg. Co., Inc. of Raleigh*, 337 N.C. 682, 685, 448 S.E.2d 115, 117 (1994). In support of this assertion, Plaintiff argues that Trillium Construction remained in "possession or control" of the condominiums by virtue of its "intermingled existence" with Trillium Links and that Trillium Links, as the declarant, had actual control over Plaintiff based upon its board appointment authority until the Association came under the control of the unit owners on 24 February 2007. On the one hand, we are unable to see how the fact that Trillium Construction had an "intermingled existence" has any tendency to show that it had possession of or control over the condominium buildings after the completion of the construction process given the absence of any attempt on Plaintiff's part to pierce the

corporate veil. On the other hand, while Trillium Links did, arguably, have possession of or control over the condominium buildings, the record discloses the existence of a genuine issue of material fact concerning the extent, if any, to which Trillium Links knew or should have known of the existence of the defects upon which Plaintiff's claim rests. As a result, although we conclude that Trillium Construction is entitled to rely on the statute of repose as a defense to Plaintiff's negligent construction claims relating to Building Nos. 100 and 200, we further conclude that the extent to which the "possession or control" exception to the statute of repose defense applies to Trillium Links is a question for the jury. As a result, although Trillium Construction is entitled to rely on the statute of repose to the extent that it is not equitably estopped from doing so, there is a jury question concerning the extent to which Trillium Links is entitled to rely on the statute of repose.

### c. Equitable Estoppel

Next, Plaintiff argues that Defendants are equitably estopped from asserting either the statute of limitations or the statute of repose. Equitable estoppel may be invoked, in proper cases, to bar a defendant from relying upon the statute of limitations or statute of repose. *Duke Univ. v. Stainback*, 320

N.C. 337, 341, 357 S.E.2d 690, 692 (1987*); see also Robinson v. Bridgestone/Firestone N. Am. Tire, L.L.C.*, 209 N.C. App. 310, 319, 703 S.E.2d 883, 889, *disc. review denied*, 365 N.C. 202, 710 S.E.2d 21 (2011). "North Carolina courts 'have recognized and applied the principle that a defendant may properly rely upon a statute of limitations as a defensive shield against "stale" claims, but may be equitably estopped from using a statute of limitations as a sword, so as to unjustly benefit from his own conduct which induced a plaintiff to delay filing suit.'" *White*, 166 N.C. App. at 305, 603 S.E.2d at 162 (quoting *Friedland v. Gales*, 131 N.C. App. 802, 806, 509 S.E.2d 793, 796 (1998)).

"The essential elements of equitable estoppel are: '(1) conduct on the part of the party sought to be estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct will be acted on by the other party; and (3) knowledge, actual or constructive, of the real facts.'" *Id.* (quoting *Friedland*, 131 N.C. App. at 807, 509 S.E.2d at 796-97). "'The party asserting the defense must have (1) a lack of knowledge and the means of knowledge as to the real facts in question; and (2) relied upon the conduct of the party sought to be estopped to his prejudice.'" *Id.* (quoting *Friedland*, 131 N.C. App. at 807, 509 S.E.2d at 796-97).

"In order for equitable estoppel to bar application of the statute of limitations, a plaintiff must have been induced to delay filing of the action by the misrepresentations of the defendant." *Jordan v. Crew*, 125 N.C. App. 712, 720, 482 S.E.2d 735, 739, *disc. review denied*, 346 N.C. 279, 487 S.E.2d 548 (1997).

In its brief, Plaintiff argues that Trillium Links should be estopped from asserting a statute of limitations or repose defense because its property manager, Mr. Boan, reviewed the Lee Report and advised the Association that he believed that further investigation would not be necessary. However, given that Plaintiff's entire board received the Lee Report and, for that reason, had the same information that was available to Trillium Links, we are unable to see how Trillium Links concealed any information that should have been made available to Plaintiff with respect to the Lee Report. In addition, the record is totally devoid of any information tending to show that Plaintiff was "induced to delay filing of the action by the misrepresentations of" Trillium Links. *Jordan*, 125 N.C. App. at 720, 482 S.E.2d at 739. As a result, Trillium Links is not equitably estopped from asserting the statute of limitations or statute of repose in opposition to Plaintiff's negligent construction claims.

Similarly, Plaintiff argues that Trillium Construction should be estopped from asserting the statute of limitations or the statute of repose against Plaintiff on the grounds that Trillium Construction actively concealed its defective work from Plaintiff. In support of this assertion, Plaintiff points to evidence tending to show that Trillium Construction placed other building materials over subsurface construction defects before these defects could be observed. In addition, Plaintiff asserts that, on occasion, Trillium Construction learned that various defects needed to be repaired without either passing this information along to Plaintiff or ensuring that the defects in question were fixed. According to Plaintiff, this conduct deprived it of the opportunity to discover the defects in a more timely manner and, thus, delayed the filing of Plaintiff's action. Trillium Construction, on the other hand, argues that the Lee Report put Plaintiff on notice of the construction defects in 2007 and is, for that reason, precluded from asserting that it is equitably estopped from asserting the statute of limitations or statute of repose.

Given our determination that genuine issues of material fact exist as to whether or not the Lee Report put Plaintiff on notice of the existence of the construction-related defects described in its complaint, it follows that issues of fact exist

as to whether Plaintiff lacked "knowledge and the means of knowledge as to the real facts in question" sufficient to establish that Trillium Construction is equitably estopped from asserting the statute of limitations or statute of repose in opposition to the negligent construction claim that it has asserted against Trillium Construction. *White*, 166 N.C. App. at 305, 603 S.E.2d at 162. As a result, given that the record discloses the existence of a genuine issue of material fact concerning the extent to which Trillium Construction is estopped from asserting the statute of limitations or the statute of repose in opposition to Defendant's negligent construction claim, the trial court erred by granting summary judgment in favor of Trillium Construction with respect to this issue.

## D. Breach of Fiduciary Duty

### 1. Individual Directors

The only claim asserted against Mr. Culbreth and Mr. Ward in Plaintiff's complaint rests upon an alleged breach of the fiduciary duty that they owed to Plaintiff during their service as members of Plaintiff's board. "A fiduciary duty arises when there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 60, 418

S.E.2d 694, 699 (internal quotation omitted), *disc. review denied*, 332 N.C. 482, 421 S.E.2d 350 (1992). According to N.C. Gen. Stat. § 47C-3-103(a), "[i]n the performance of their duties, the officers and members of the executive board shall be deemed to stand in a fiduciary relationship to the association and the unit owners and shall discharge their duties in good faith, and with that diligence and care which ordinarily prudent men would exercise under similar circumstances in like positions[,]" N.C. Gen. Stat. § 47C-3-103(a), with the duties imposed upon members of Plaintiff's board by the Declaration having included the "management, replacement, maintenance, repair, alteration, and improvement of the Common Elements."

Trillium Links, acting as declarant, appointed Mr. Culbreth and Mr. Ward to Plaintiff's board.[8] Mr. Culbreth and Mr. Ward argue that, given that Plaintiff had no role in the construction of the condominium buildings, they had no responsibility for the construction of those buildings or any obligation to hire inspectors or to otherwise oversee the construction process. In support of this position, Mr. Culbreth and Mr. Ward point to the testimony of Mr. Gentry, who indicated that, in his experience,

---

[8]Although Plaintiff argues that, since Mr. Culbreth and Mr. Ward were also members of Trillium Links, this arrangement was "presumptively fraudulent," Plaintiff's expert, Marvin Gentry, testified that it is not improper for a developer or declarant to appoint its principals to serve on the board of a condominium association during the period of declarant control.

condominium associations do not typically participate in the original construction of the condominium buildings, and the absence of any evidence tending to show that Plaintiff had anything to do with the construction of the buildings during the period when the declarant retained control over Plaintiff.

In spite of the fact that Mr. Culbreth and Mr. Ward had no direct involvement in the construction of the condominium buildings, they did, as directors, have an obligation to disclose material facts regarding the existence of any construction defects of which they were aware to Plaintiff. *King v. Bryant*, __ N.C. App. __, __, 737 S.E.2d 802, 809 (2013) (stating that an affirmative duty "to disclose all facts material to a transaction" is inherent in any fiduciary relationship); *Searcy v. Searcy*, 215 N.C. App. 568, 572, 715 S.E.2d 853, 857 (2011) (stating that "[a] duty to disclose arises where a fiduciary relationship exists between the parties to [a] transaction"). Although Mr. Culbreth and Mr. Ward do not dispute the existence of such a duty to disclose, they do argue that the record does not contain any evidence tending to show that they possessed any information concerning the existence of construction-related defects in the condominium buildings of the type alleged in the complaint. On the other hand, Plaintiff argues that Mr. Culbreth and Mr. Ward actually knew of material

defects in the foundation of Building No. 100 and failed to disclose the existence of these problems to Plaintiff. For example, Mr. Culbreth and Mr. Ward acknowledge that they had received the Structural Integrity report, which noted that two foundation piers had not been installed in Building No. 100 and that a sagging floor had resulted from this omission. In addition, Mr. Tenney stated that the unit owner-controlled board was never informed by either of the prior directors that foundation problems had been discovered beneath one of the buildings. As a result of the fact that this evidence, when viewed in the light most favorable to Plaintiff, creates a genuine issue of material fact concerning the extent, if any, to which Mr. Culbreth and Mr. Ward breached a fiduciary duty that they owed to Plaintiff by failing to disclose relevant information in their possession,[9] the trial court erred by granting summary judgment in their favor with respect to this claim.

## 2. Trillium Links

Next, Plaintiff argues that the trial court erroneously granted summary judgment in favor of Trillium Links on the

---

[9]Although Mr. Culbreth and Mr. Ward stated that the foundation pier problem was corrected and that no one had ever described the sagging floor as a construction defect, these facts go to the weight and credibility of the evidence rather than its sufficiency to support a breach of fiduciary duty claim.

grounds that the same facts that support a determination that Mr. Culbreth and Mr. Ward violated a fiduciary duty establish a breach of fiduciary duty by Trillium Links as well. Trillium Links, on the other hand, argues that a condominium developer does not, as a matter of North Carolina law, owe a fiduciary duty to the property owner's association during the period of declarant control. Although N.C. Gen. Stat. § 47C-3-103(a) expressly provides that the members of a condominium association board owe a fiduciary duty to the association, N.C. Gen. Stat. § 47C-3-103(a), the Condominium Act is silent with respect to the issue of whether such a duty is owed to the condominium association by a developer or declarant. However, N.C. Gen. Stat. § 47C-1-108 states that, "[t]he principles of law and equity supplement the provisions of this chapter, except to the extent inconsistent with this chapter." N.C. Gen. Stat. § 47C-1-108. Thus, the extent to which Trillium Links owed a fiduciary duty to Plaintiff during the period of declarant control must necessarily be governed by common law principles.

"'Generally, in North Carolina . . . there are two types of fiduciary relationships: (1) those that arise from legal relations such as attorney and client, broker and client . . . partners, principal and agent, trustee and cestui que trust, and (2) those that exist as a fact, in which there is confidence

reposed on one side, and the resulting superiority and influence on the other.'" *S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*, 189 N.C. App. 601, 613, 659 S.E.2d 442, 451 (2008) (quoting *Rhone-Poulenc Agro S.A. v. Monsanto Co.*, 73 F. Supp. 2d 540, 546 (M.D.N.C.1999) (internal quotations omitted)). As a result of the fact that Plaintiff has not asserted that any fiduciary duty arose from a "legal" relationship between Plaintiff and Trillium Links, we must determine whether a fiduciary relationship existed between Plaintiff and Trillium Links as a matter of fact.

The undisputed record evidence establishes, during the period of declarant control, "the Declarant [Trillium Links had] control of the Association through its power to appoint and remove Board Members." Trillium Links remained in control of Plaintiff until 24 February 2007, when authority over the Association was transferred to the unit owners. As a result of the fact that Trillium Links had a position of dominance over Plaintiff and the fact that individual unit owners or prospective unit owners had little choice except to rely upon Trillium Links to protect their interests during the period of developer control, we hold that the record contains sufficient evidence from which the existence of a fiduciary duty between the two entities could be established. In addition, for the

reasons set forth above in connection with our discussion of the breach of fiduciary duty claim that Plaintiff asserted against Mr. Culbreth and Mr. Ward, we further conclude that the record evidence, when considered in the light most favorable to Plaintiff, evidences the existence of a genuine issue of material fact concerning the extent, if any, to which Trillium Links breached a fiduciary duty that it owed to Plaintiff. As a result, the trial court erred by granting summary judgment in favor of Trillium Links with respect to this issue.

### 3. Statute of Limitations

Mr. Culbreth, Mr. Ward, and Trillium Links argue that Plaintiff's fiduciary duty claims are barred by the statute of limitations on the grounds that the Lee Report sufficed to put Plaintiff on notice of the facts upon which their breach of fiduciary duty claims rely. Breach of fiduciary duty claims accrue upon the date when the breach is discovered and are subject to a three year statute of limitations. *Toomer v. Branch Banking & Trust Co.*, 171 N.C. App. 58, 66, 614 S.E.2d 328, 335 (stating that "[a]llegations of breach of fiduciary duty that do not rise to the level of constructive fraud are governed by the three-year statute of limitations applicable to contract actions contained in N.C. Gen. Stat. § 1-52(1)"), *disc. review denied*, 360 N.C. 78, 623 S.E.2d 263 (2005). As a result

of our determination that the trial court erred by granting summary judgment with respect to the issue of whether Plaintiff's negligent construction claims were time-barred given the existence of genuine issues of material fact concerning the date upon which Plaintiff knew or had reason to believe that extensive defects existed in the condominium buildings and the fact that the same principles are applicable to the present issue, we conclude that the trial court erred by granting summary judgment in favor of Mr. Culbreth, Mr. Ward, and Trillium Links with respect to Plaintiff's breach of fiduciary duty claims on statute of limitations grounds.

## E. Constructive Fraud

Next, Plaintiff contends that the record evidence tends to show the existence of a valid claim for constructive fraud against Mr. Culbreth, Mr. Ward, and Trillium Links. For that reason, Plaintiff further contends that the trial court erred by granting summary judgment in favor of Mr. Culbreth, Mr. Ward, and Trillium Links on the grounds that a ten-year statute of limitations applies to this claim.[10] Plaintiff's argument lacks merit.

---

[10]"A claim of constructive fraud based upon a breach of fiduciary duty falls under the ten-year statute of limitations[.]" *NationsBank of N.C. v. Parker*, 140 N.C. App. 106, 113, 535 S.E.2d 597, 602 (2000).

Although the showing necessary to establish the existence of a breach of fiduciary duty and constructive fraud involves overlapping elements, the two claims are separate under North Carolina law. *White*, 166 N.C. App. at 293, 603 S.E.2d at 155. In order to recover for constructive fraud, a plaintiff must establish the existence of circumstances "(1) which created the relation of trust and confidence, and (2) [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust[.]" *State ex rel. Long v. Petree Stockton, L.L.P.,* 129 N.C. App. 432, 445, 499 S.E.2d 790, 798 (quoting *Rhodes v. Jones*, 232 N.C. 547, 549, 61 S.E.2d 725, 726 (1950)), *disc. review dismissed*, 349 N.C. 240, 558 S.E.2d 190 (1998). "Further, an essential element of constructive fraud is that defendants sought to benefit themselves in the transaction." *Piles v. Allstate Ins. Co.,* 187 N.C. App. 399, 406, 653 S.E.2d 181, 186 (2007) (quotation omitted), *disc. review denied*, 362 N.C. 361, 663 S.E.2d 316 (2008). "The primary difference between pleading a claim for constructive fraud and one for breach of fiduciary duty is the constructive fraud requirement that the defendant benefit himself." *White*, 166 N.C. App. at 294, 603 S.E.2d at 156. In order to satisfy this requirement, "Plaintiff's evidence must prove defendants sought to benefit

themselves or to take advantage of the confidential relationship." *Wilkins v. Safran*, 185 N.C. App. 668, 675, 649 S.E.2d 658, 663 (2007) (citing *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 666, 488 S.E.2d 215, 224 (1997)).

In its complaint, Plaintiff alleged in support of its constructive fraud claim that:

> 70. By virtue of their positions as officers and directors of the Association and their control over the Association, Defendants Trillium Links, Culbreth and Ward stood in a relationship of special faith, confidence and trust with respect to the Plaintiff Association. These Defendants therefore owed fiduciary duties to the Association under North Carolina law.
>
> . . . .
>
> 72. These Defendants breached their fiduciary duties and acted in their own interests instead of those of the Association by hiring Trillium Construction, which shared common ownership and control with Trillium Links, to build the Trillium Ridge Condos. Upon information and belief, these Defendants benefited from this transaction at the expense of the Association.
>
> . . . .
>
> 74. These Defendants also breached their fiduciary duties by failing to disclose material facts regarding the defects and their own negligence and conflict of interest actions to the unit owners and the new members of the Association's Executive Board when control of the Association was transferred in February, 2007.

Although Plaintiff alleged that Mr. Culbreth, Mr. Ward, and Trillium Links "benefitted from this transaction at the expense of the Association," Plaintiff has not directed our attention to any evidence tending to show that Defendants sought or gained any personal benefit by taking unfair advantage of their relationship with Plaintiff. Simply put, given that Plaintiff has failed to adduce any evidence tending to show that "defendants sought to benefit themselves in the transaction," *Piles*, 187 N.C. App. at 406, 653 S.E.2d at 186, it has failed to forecast sufficient evidence to establish a constructive fraud claim governed by a ten year statute of limitations rather than a breach of fiduciary duty governed by a three year statute of limitations.[11]

## F. Breach of Warranty

Finally, Plaintiff argues that the trial court erred by granting summary judgment in favor of Trillium Links with respect to its breach of warranty claim. More specifically, Plaintiff argues that Trillium Links breached the implied warranty applicable to condominium units to the effect that "the premises are free from defective materials, constructed in a workmanlike manner, [and] constructed according to sound

[11]However, for the reasons set forth above, Plaintiff's breach of fiduciary duty claims survive the summary judgment stage of this case.

engineering and construction standards[.]"  N.C. Gen. Stat. § 47C-4-114.  However, "a declarant and any person in the business of selling real estate for his own account may disclaim liability in an instrument signed by the purchaser for a specified defect or specified failure to comply with applicable law, if the defect or failure entered into and became a part of the basis of the bargain."  N.C. Gen. Stat. § 47C-4-115(b). Although Trillium Links does not contest the existence of the warranty upon which Plaintiff's claim relies or argue that the record does not contain any evidence tending to show that a breach of this warranty occurred, it does argue that Plaintiff's breach of warranty claim is barred by the applicable statute of limitations or statute of repose.

Plaintiff's claim for breach of warranty is subject to a three year statute of limitations, with this claim accruing upon discovery of the breach.  *Kaleel Builders, Inc. v. Ashby*, 161 N.C. App. 34, 44, 587 S.E.2d 470, 477 (2003) (the statute of limitations for breach of warranty is three years from the date of the breach), *disc. review denied*, 358 N.C. 235, 595 S.E.2d 152 (2004).  As a result of our earlier determination that the record reflects the existence of a genuine issue of material fact concerning the date upon which Plaintiff knew or reasonably should have known of the existence of the construction defects

upon which its claim relies, we hold that Trillium Links was not entitled to the entry of summary judgment in its favor with respect to Plaintiff's breach of warranty claims on statute of limitations grounds. Similarly, given the existence of a genuine issue of material fact concerning the extent, if any, to which Trillium Links knew, or had reasonable grounds to know, of the existence of the defects in the construction of the Trillium Ridge condominiums, Trillium Links was not entitled to summary judgment in its favor on statute of repose grounds. As a result, to the extent to that the trial court granted summary judgment in favor of Trillium Links with respect to Plaintiff's breach of warranty on the basis of the applicable statute of limitations or the statute of repose, the trial court erred.

## III. Conclusion

Thus, for the reasons set forth above, we conclude that the trial court correctly granted summary judgment with respect to some issues and erred by granting summary judgment with respect to other issues. As a result, the trial court's orders and amended orders should be, and hereby are, affirmed in part and reversed in part and this case should be, and hereby is, remanded to the Jackson County Superior Court for further proceedings not inconsistent with this opinion.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

Judge STROUD concurs.

Judge ROBERT N. HUNTER, JR. concurred in part and concurred in result only in part in separate opinion prior to 6 September 2014.

NO. COA14-183

NORTH CAROLINA COURT OF APPEALS

Filed: 16 September 2014

TRILLIUM RIDGE CONDOMINIUM
ASSOCIATION, INC.,
    Plaintiff,

    v.                                    Jackson County
                                        No. 11 CVS 462
TRILLIUM LINKS & VILLIAGE, LLC;
TRILLIUM CONSTRUCTION COMPANY,
LLC; SHAMBURGER DESIGN STUDIO,
P.C., SHAMBURGER DESIGN, INC.
(f/k/a SHAMBURGER DESIGN STUDIO,
INC.), S.C. CULBRETH, JR., AND
GREGORY A. WARD,
    Defendants.


       HUNTER, JR., Robert N., Judge, concurring.

       I concur in the opinion of the majority in all respects except for the analysis of the constructive fraud claim. For the reasons discussed in *Orr v. Calvert*, 212 N.C. App. 254, 270, 713 S.E.2d 39, 50 (Hunter, Jr., J., dissenting), *rev'd for reasons stated in dissenting opinion*, 365 N.C. 320, 720 S.E.2d 387 (2011), I only concur in the results as to this issue.